# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Chris McNeil, | ) |
| Plaintiffs, | ) |
| | ) Civil Action No.: 2:09-CV-00979-PMD |
| v. | ) |
| | ) |
| Keith Sherman, | ) **ORDER** |
| | ) |
| Defendant. | ) |

This matter is before the court upon Defendant Keith Sherman's ("Sherman") motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth herein, the court denies Sherman's motion.

## BACKGROUND

Plaintiff Chris McNeil ("McNeil") is a resident of Charleston, South Carolina and operates a South Carolina business, Pensarc, LLC, which specializes in fitness based software and design. Defendant Sherman is a Kentucky resident who hired McNeil to design and develop an online personal training and health and wellness website, eFIT4ME.

Sherman learned of McNeil and his company through Fitness Management Magazine, which discussed Pensarc as having won two awards for innovation in fitness software. Sherman had recently been selected by Yum! Brands, Inc. ("Yum!")[1] to develop an online fitness and nutrition website, eFIT4ME, for Yum!'s "Keep it Balanced" campaign. After learning about McNeil and his business, Sherman called McNeil around July 7, 2008 to discuss whether McNeil would be interested in developing the fitness website. According to McNeil, Sherman

---

[1] Yum! Brands, Inc. is based in Louisville, Kentucky, and is the parent company of multiple restaurant brands including KFC, Pizza Hut, Taco Bell, and Long John Silver's.

1

represented that he had a binding contract in place with Yum! to provide online fitness services to each of Yum!'s approximately 800,000 employees at a cost of $0.25 per employee. According to McNeil, he and Sherman talked by telephone on July 17th, July 18th, and on July 28th of 2008 to discuss further details of McNeil's development of eFIT4ME. On July 30, 2008, Sherman sent McNeil a Letter of Intent ("LOI") outlining the terms of their agreement, whereby McNeil would "develop an operating system to host, maintain and continue to develop an on-line personal training and health and wellness website," and Sherman would pay McNeil $10,000 at the execution of the LOI, $5,000 at the successful completion of a beta test rollout to approximately 50,000 users, and a further $5,000 upon a full rollout of the website. In addition, Sherman agreed to pay McNeil a percentage of the gross revenues collected by Sherman from the website. McNeil and Sherman never entered into a formal services contract beyond the LOI.

According to McNeil, McNeil began development of the software for the website; however, eventually Sherman revealed to McNeil that there was no longer a guaranteed contract between Sherman and Yum! with respect to all 800,000 employees. Thus, McNeil argues that while Sherman paid McNeil the $20,000 fixed payment under the LOI, McNeil allegedly did not receive the percentage of gross revenues that he expected based on Sherman's representation of 800,000 employees at $0.25. According to McNeil, Sherman represented that "the worst possible projected annual income from the [web]site would be $338, 965.00;" however, McNeil has only received one revenue-based check for approximately $50.00.

On March 26, 2009, McNeil filed a Complaint in South Carolina state court alleging breach of contract, fraud, negligent misrepresentation, breach of contract accompanied by fraudulent acts, and seeking declaratory relief. Sherman removed the case to federal court on April 14, 2009 based on diversity jurisdiction.

On April 20 2009, Sherman filed the present motion to dismiss asserting that McNeil had not sufficiently alleged facts that would support this court's exercise of personal jurisdiction over Sherman. Should the court deny the motion to dismiss, Sherman moves in the alternative to transfer venue to the Western District of Kentucky, Louisville Division pursuant to 28 U.S.C. § 1404(a). McNeil filed a response in opposition to this motion on May 8, 2009, to which Sherman filed a reply on May 18, 2009. Finally, with the court's permission, McNeil filed a surreply on May 29, 2009.

## **ANALYSIS**

### I. **Sherman's Motion to Dismiss for Lack of Personal Jurisdiction under 12(b)(2)**

#### A. **Personal Jurisdiction Standard**

Sherman has filed a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2). When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When the court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds"

of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause.[2] *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether Defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623-24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, when

---

[2] South Carolina's long-arm statute provides,
(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
    (1) transacting any business in this State;
    (2) contracting to supply services or things in the State;
    (3) commission of a tortious act in whole or in part in this State;
    (4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
    (5) having an interest in, using, or possessing real property in this State;
    (6) contracting to insure any person, property, or risk located within this State at the time of contracting;
    (7) entry into a contract to be performed in whole or in part by either party in this State; or
    (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. CODE 36-2-803(a).

the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416. Here, McNeil does not contend that Sherman was engaged in "substantial" or "continuous and systematic" activities in South Carolina such as to subject him to general jurisdiction in the State. Thus, the court needs only determine whether Defendants' contacts were sufficient to subject them to specific jurisdiction in South Carolina.

A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the Plaintiff's favor. *See, e.g., Precept Med. Products, Inc., v. Klus,* 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12 (b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable."

*Nolan*, 259 F.3d at 215-16 (citing *Helicopteros*, 466 U.S. at 415-16, and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1988)).

Although the test for purposeful availment can be somewhat imprecise, significant factors typically include: defendant's physical presence in the forum state, the extent of negotiations in the forum state, the extent to which the contract was to be performed in the forum state, and who initiated the relationship. *Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F. Supp. 2d 622, 626 (D. Md. 2000). Underlying these factors is the central question of whether a defendant has performed purposeful acts in the forum state such that the defendant has created a substantial relationship with the forum state. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000); *ESAB Group*, 126 F.3d at 623.

B.     **McNeil's Arguments in Support of Personal Jurisdiction**

McNeil argues that Sherman has the requisite minimum contacts with South Carolina to satisfy both the statutory and constitutional requirements for personal jurisdiction. Under South Carolina's long arm statute, McNeil argues that Sherman has (1) committed a tortious act in whole or in part in this State, and (2) entered into a contract to be performed in whole or in part by either party in this State. S.C. Code 36-2-803(a)(3) & (7). McNeil argues that Sherman directed fraudulent misrepresentations to McNeil in South Carolina regarding the true nature of Sherman's underlying contract with Yum!. In addition, McNeil argues that the contract was intended to and was in fact performed in South Carolina by McNeil. Finally, McNeil argues that the court's exercising personal jurisdiction over Sherman in this case would not offend notions of fair play and substantial justice.

### C. Sherman's Arguments Against Personal Jurisdiction

Sherman argues that he does not have the necessary minimum contacts with South Carolina to satisfy South Carolina's long-arm statute or the due process clause of the Constitution. Sherman alleges that he has never conducted business in South Carolina, has no registered agents in South Carolina, and does not have any customers in South Carolina. Sherman also alleges that he and his businesses have no offices located in South Carolina, and that he owns no property in this State. Sherman argues that the services provided by McNeil in creating a website could have been done by McNeil anywhere and, therefore, do not equate to Sherman entering into a contract to be performed in whole or in part in South Carolina. Sherman also states that all of his communications with McNeil about their agreement and work took place via email and telephone conversations, and that he never physically visited South Carolina. Thus, Sherman asks the court to dismiss McNeil's Complaint for lack of personal jurisdiction.

### D. McNeil Has Established a Prima Facie Showing of Personal Jurisdiction

Considering the Complaint and other pleadings in the present case, the court finds that McNeil has established a prima facie showing of this court's personal jurisdiction over Sherman.

First, Sherman initiated contact with McNeil when he first called McNeil in South Carolina around July 7, 2008 to discuss whether McNeil was interested in providing services for an online fitness website. Courts often factor which party initiated the relationship in determining whether or not a defendant has "minimum contacts" with a jurisdiction. *See, e.g.*, *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996); *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996); *Autoscribe Corp. v. Goldman and Steinberg*, 47 F.3d 1164 at *6 (4th Cir. 1995) (unpublished).

Additionally, Sherman entered into a contract with McNeil where he knew that the requested services would be performed by McNeil in South Carolina. While entering into a contract inside South Carolina without more is not enough to establish minimum contacts, *Cribb v. Spatholt,* Case No. 4519, 2009 WL 817858, *5 (S.C. App. Mar. 24, 2009) (unreleased), entering into a contract to be performed, at least in part, within South Carolina will subject a party to personal jurisdiction in South Carolina as long as the party was aware that some performance was to take place within the State. *Assoc. Receivables Funding, Inc. v. Nu Specialty Foods*, 2005 WL 3348922, *2 (D.S.C. 2005) (unpublished) (citing *Colite Indus. v. G.W. Murphy Constr. Co.,* 297 S.C. 426, 377 S.E.2d 321, 322 (S.C. 1989)). In this case, Sherman contacted McNeil multiple times in South Carolina, and Sherman knew that McNeil and his business, Pensarc, were located in Charleston, South Carolina. Sherman also sent the Letter of Intent to McNeil at his Charleston, South Carolina address. Sherman argues that McNeil's work could have been completed anywhere because creating a website, unlike manufacturing tangible goods as in cases such as *Colite*, can be performed on a computer anywhere. However, all of the facts before the court show that McNeil's work was in fact performed in South Carolina. In addition, there are no facts that suggest that the parties contemplated the work to be performed anywhere other than South Carolina.

Sherman argues that he has not established any type of physical presence in South Carolina. However, the reality of modern commerce is that advances in technology have made it so that a physical presence is no longer a necessary or essential part of negotiating, agreeing to, or even performance of a commercial contract. This reality has been recognized by courts, which have "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476. Therefore, even if Sherman never set

foot in the state of South Carolina, this does not preclude a finding that Sherman had "minimum contacts" with the state.

Instead, the court examines the totality of the circumstances to determine if a defendant is being sued in the relevant jurisdiction "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475. Here, however, far from being a "random, fortuitous, or attenuated contact," McNeil has alleged that Sherman actively negotiated a contract with a South Carolina resident for the development, production, and delivery of a fitness website.

While a single action or transaction within a jurisdiction does not *automatically* subject a party to personal jurisdiction, courts have often found that a defendant has purposefully availed itself of the benefits of a forum based upon a single act or transaction with a plaintiff in that jurisdiction. *See, e.g.*, *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046 (4th Cir. 1988). This is particularly true if the single transaction was a complicated transaction involving more than the mere exchange of money for goods or services, or if the transaction created some sort of ongoing obligation or relationship. *See, e.g.*, *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007); *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1219 (7th Cir. 1990) ("While a single contract between a seller and a nonresident buyer, without something more (such as active solicitation), does not automatically establish purposeful availment, where a defendant has created 'continuing obligations' between himself and the residents of the forum, he manifestly avails himself of the privilege of conducting business in the forum.").

In the present case, the agreement between Sherman and McNeil was much more than a simple contract and did create an ongoing obligation and relationship between Sherman and a South Carolina resident. Sherman solicited McNeil to design and develop innovative fitness

9

software. The reality of an agreement such as this is that it involves detailed negotiations between the two sides regarding the exact specifications of the product to be designed and marketed. Even after the initial agreement is reached, such an agreement necessitates a substantial amount of "back and forth" contact between the two sides regarding any issues arising in the design or development or any changes that either side deems necessary to the product. Therefore, when Sherman hired McNeil to design and produce the fitness software, he was necessarily undertaking some degree of ongoing obligations toward McNeil in South Carolina until the product in question was designed and developed to Sherman's satisfaction. Given that Sherman knowingly established an ongoing business relationship with a South Carolina resident in a contract for the design and development of a new website, the court finds that Sherman purposefully availed himself of the benefits of doing business in South Carolina, thereby satisfying the first prong of the due process analysis.

The second part of the Fourth Circuit's three-pronged test for determining whether a court may exercise specific jurisdiction over a party is whether the claim in question arises out of the defendant's forum-related activities. *Nolan*, 259 F.3d at 215-16. In the present case, McNeil's claim arises out of Sherman's forum-related activities. McNeil alleges breach of contract, fraud, negligent misrepresentation, and breach of contract accompanied by fraudulent acts all stemming from Sherman's hiring of McNeil to design and develop the fitness software. Therefore, Plaintiff's claim arises out of Defendants' alleged forum-state activities, and the court finds that the second prong of the *Nolan* due process test is satisfied.

The third and final inquiry a court must make before exercising specific personal jurisdiction over an out-of-state defendant is whether the exercise of such jurisdiction is reasonable, or, in other words, "does not offend 'traditional notions of fair play and substantial

justice.'" *Int'l Shoe*, 326 U.S. at 316 (citations omitted). In making this determination, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). Further, the court must consider "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

Considering the factors listed above, the court finds that exercising personal jurisdiction over Sherman comports with the standards of fair play and substantial justice, and is therefore reasonable. South Carolina has a substantial interest in adjudicating a contract dispute between a South Carolina resident and an out-of-state defendant. McNeil has a substantial interest in seeking relief in the state in which he lives and operates his business and where he was injured. Furthermore, although it may be somewhat burdensome for Sherman to defend a suit in South Carolina, Sherman intentionally made contact with South Carolina sufficient to confer jurisdiction over it. In addition, the court notes that with the recent advances in travel, telecommunications, and online technologies, litigating a matter outside of one's home jurisdiction has become substantially less burdensome today than it was in the past, a trend recognized by the Supreme Court. *See Burger King*, 471 U.S. at 474 ("And because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.") (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Therefore, the court finds that

there are no compelling reasons that render jurisdiction over Defendants in South Carolina unreasonable.

For the reasons as stated above, the court finds that Sherman has sufficient minimum contacts in South Carolina, and that this court's exercise of personal jurisdiction over them does not offend traditional notions of fair play and substantial justice.

## II. Sherman's Motion to Transfer Venue under 28 U.S.C. 1404(a)

In the alternative, Sherman seeks a transfer of venue to the Western District of Kentucky, Louisville Division pursuant to 28 U.S.C. § 1404(a). That section states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). In determining whether to exercise that discretion, "the court must consider whether venue is proper in the proposed transferee district. If the proposed venue is proper, the court then considers whether transfer is in the interest of justice and will serve the convenience of the parties and witnesses." *United States v. $78,850.00 in U.S. Currency,* No. 2:05-1752-PMD, 2006 WL 2384709, at *3 (D.S.C. Mar.9, 2006) (citation omitted).[3] Additionally, as a general rule, the plaintiff's choice of forum is given substantial weight and should rarely be disturbed unless the balance is strongly in favor of a defendant.

---

[3] The following factors are commonly considered in ruling on a motion to transfer:(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *Landers v. Dawson Constr. Plant, Ltd.,* 201 F.3d 436, 1999 WL 991419, at *2 (4th Cir.1999) (unpublished table decision) (citations omitted).

*Miliken & Co. v. F.T.C.,* 545 F. Supp. 511, 517 (D.S.C. 1983) (citing *Morehead v. Barksdale*, 263 F.2d 117 (4th Cir. 1959)).

Sherman argues that multiple Yum! employees who were involved in the development of the eFIT4ME website are potential witnesses and are all located in Kentucky. Sherman lists these potential witnesses and their job title; however, Sherman does not state specifically the topics of each witness' testimony. Additionally, Sherman argues that "[t]housands of pages of documents that are relevant to this dispute will be made available in Louisville, Kentucky by both Sherman and Yum!." (Sherman's Mem. at 13-14). Finally, Sherman argues that there is a "local interest in having the controversy settled in Kentucky as the controversy involves a company whose international headquarters are located in Louisville, Kentucky—Yum!" (*Id.* at 14).

McNeil argues that Kentucky is not a convenient forum because McNeil lives and works in South Carolina. (McNeil Mem. at 11). McNeil also argues that his choice of forum, as the plaintiff, should be given greater weight. (*Id.*). McNeil offers a witness, Monika Gauthier, who is a resident of Mount Pleasant, South Carolina and who will corroborate the allegedly fraudulent misrepresentations Sherman directed toward McNeil. (*Id.* at 12). McNeil also asserts that the location of the documents should not be as heavily weighed considering the relative ease of copying and moving documents from one place to another. (*Id.*). As to the list of potential Kentucky witnesses described by Sherman, McNeil states that Sherman just simply lists Yum! employees and fails to state the topic of each witness's testimony. (McNeil Surreply at 7). Finally, McNeil asserts that South Carolina has a strong interest in seeking redress for the harm of its citizens. (McNeil Mem. at 12).

Although venue would be proper in the proposed transferee district as Kentucky is where the defendant resides, because the court finds that the balance of the interests weighs in favor of McNeil, this court declines to exercise its discretion to transfer the present matter to Kentucky.

First, while the court notes the list of potential witnesses located in Kentucky, it is the materiality of the prospective witnesses' testimony, and not merely the number of prospective witnesses that will determine the extent to which their convenience will be weighed. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (district courts must receive "some factual information relative to the materiality of witness testimony and [other relevant] considerations"). In this case, Sherman lists approximately nineteen Yum! employees who have information about the eFIT4ME website; however, Sherman does not demonstrate how these potential witnesses' testimony is material to the contract dispute between McNeil and Sherman. McNeil has also listed a potential witness located in South Carolina who will testify to hearing the allegedly fraudulent misrepresentations made by Sherman.

In addition, while the court takes into consideration the fact that documents may be located in Kentucky that will be necessary in resolving this case, the location of documents has become a less significant factor as technological advances make the copying, storage, and transfer of documents easier. As with the list of potential witnesses, in regards to the documents located in Kentucky, Sherman simply states that "thousands of documents relevant to this dispute" are located in Kentucky, but he fails to identify the type or scope of these documents. Additionally, just as Sherman's business records and documents are located in Kentucky, McNeil's business records and documents are located in South Carolina.

Finally, Sherman argues that Kentucky has a local interest in the suit because Yum! is headquartered in Kentucky. This court agrees with McNeil in that this action is between McNeil

and Sherman—Yum! is not a party to the suit. South Carolina has a local interest in providing a forum for South Carolina residents to seek redress for injuries caused to them by out-of-state defendants. Therefore, as Plaintiff's choice of forum is entitled to "significant weight," *$78,850.00 in U.S. Currency,* 2006 WL 2384709, at *4; *see also Gulf Oil Corp.* 330 U.S. at 508, and because a balance of the interests weighs in favor of Plaintiff, this court declines to exercise its discretion to transfer the present matter to Kentucky.

## **CONCLUSION**

Accordingly, for the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to dismiss this action for lack of personal jurisdiction or in the alternative to transfer venue is **DENIED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**October 7, 2009**
**Charleston, SC**